IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-02-79 |
| | § | CIVIL ACTION NO. H-07-1586 |
| ARTURO APAEZ-MENDEZ, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Arturo Apaez-Mendez's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 321),[1] and the United States' Answer and Motion to Dismiss (Document No. 324). After reviewing Movant's § 2255 Motion, the Government's Answer and Motion to Dismiss, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 324) be GRANTED, that Movant's Motion to Vacate, Set Aside, or Correct Sentence (Document No. 321) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

---

[1] Arturo Apaez-Mendez's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-07-1586 and at Document No. 321 in Criminal Action No. H-02-79. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.      **Procedural History**

Movant Arturo Apaez-Mendez ("Apaez-Mendez"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.  This is Apaez-Mendez's first attempt at § 2255 relief.

On March 20, 2002, Apaez-Mendez, and seven co-defendants were charged in a superseding indictment with alien harboring.  (Document No. 61).  Apaez-Mendez was charged in count one with aiding and abetting the harboring of illegal aliens within the United States in violation of 8 U.S.C. §§§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(I), 1324(a)(1)(A)(v)(II), and 18 U.S.C. § 2 (count one); aiding and abetting the harboring of illegal aliens within the United States in violation of 8 U.S.C. §§§ 1324(a)(1)(A)(ii), 1324(a)(1)B)(I), 1324(a)(1)(A)(v)(II), and 18 U.S.C. § 2 (count two), and conspiracy to commit hostage taking in violation of 18 U.S.C. § 1203(a) (count three).  (Document No. 61).  Apaez-Mendez, pursuant to a written plea agreement, pleaded guilty to counts one and three on June 21, 2002.  (Document Nos. 90, 91, and Transcript of Rearraignment Hearing, No. 159).  Under the written plea agreement, Apaez-Mendez agreed to plead guilty to Counts 1 and 3, and the Government agreed to dismiss Count 2.  Apaez-Mendez also waived his right to appeal, except under limited circumstances, and waived his right to collaterally attack his conviction.  The written plea agreement provides in pertinent part:

> 9.   The defendant is aware that the defendant's sentence will be imposed in accordance with the United States Sentencing Commission, *Guidelines Manual*.  The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Knowing that, the defendant waives the right to appeal the sentence or the manner in which it was determined on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatever, except that the defendant may appeal a

sentence imposed above the statutory maximum and an upward departure from the sentencing guidelines not requested by the United States. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section 2255, afford a defendant the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Knowing that, the defendant waives his right to contest or collaterally attack his conviction or sentence by means of any post conviction proceeding. (Document No. 91).

At the June 21, 2002, Rearraignment, the Court engaged in an extended colloquy with Apaez-Mendez to ensure that he had read the written Plea Agreement and had conferred with his attorney about the contents of the Plea Agreement. The Court also advised Apaez-Mendez of the consequences of his plea, including the sentence he faced, the manner in which his sentence would be calculated, and the waiver provisions. For example:

> The Court: Have you had the written plea agreement translated for you?
>
> The Defendant: Yes.
>
> The Court: Do you understand everything in the written plea agreement?
>
> The Defendant: Yes, ma'am.
>
> The Court: Are there any other or different promises or assurances that have been made to you in an effort to persuade you to plead guilty that are not contained in that written plea agreement?
>
> The Defendant: No, ma'am.
>
> The Court: So the written plea agreement contains all the understanding that you have with the Government with reference to your plea of guilty; is that correct?
>
> The Defendant: Yes, ma'am. Yes, your Honor.
>
> The Court: Do you understand that the terms of the written plea agreement will be binding upon you and upon the Government, but they're not binding upon me. So it could be that the Government may make a motion or a recommendation in order to

fulfill their end of the bargain, but I don't have to grant that motion or follow that recommendation.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  And if I don't follow the recommendation or grant the motion, it could mean that you get a sentence that is more severe than the one you would get if I did follow the recommendation or grant the motion.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  And if that happens, that is, you get a more severe sentence, do you understand you will not be given a chance to withdraw your plea of guilty?

The Defendant:  Yes, ma'am.

The Court:  Has anyone in any way attempted for force you to plead guilty in this case?

The Defendant:  No, ma'am.

The Court:  And you['re] pleading guilty because you are guilty?

The Defendant:  Yes, ma'am.

The Court:  Do you understand that the offense to which you are pleading guilty is a felony offense and, if your plea is accepted, you will be adjudged guilty of that offense, and such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess firearms?

The Defendant:  Yes, ma'am.

The Court:  Are you a citizen of the United States?

The Defendant:  Yes, ma'am.

The Court:  I want to go over with you now, Mr. Apaez, the maximum possible penalties you're facing as a result of your plea of guilty this morning.

All right.  You are pleading guilty to Counts 1 and 3 of the Indictment.  Count 1 is aiding and abetting the harboring of illegal aliens, and Count 3 is hostage taking.  The penalty for Count 1 is imprisonment for a term not to exceed 10 years and a fine of

4

up to $250,000.  The penalty for Count 3 is imprisonment for any term of years or for life.

Mr. Davis:  Yes, Your honor.

The Court:  And a fine of up to $250,000.  In addition to those penalties, there would also be supervised release for Count 1, a maximum of 3 years; for Count 3, no more than 5 years.

In addition to that supervised release, there would be certain conditions of supervised release which you have to follow.  If you fail to follow those, you could be put back into prison for some additional period of time without any credit for time you already served on supervised release without any credit for the time you've served in prison.

And there would be a special assessment of $100 for each of the two counts, for a total of $200.

Do you understand that the maximum possible penalties for the crimes that you're pleading guilty to are the prison time I've just discussed with you, the fine, supervised release, conditions of supervised release, and the special assessment?

The Defendant:  Yes, ma'am.

The Court:  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what the sentence will be in a criminal case. Have you and Mr. Rodriguez talked about how those guidelines may apply in your case?

The Defendant:  Yes, ma'am.

The Court:  Do you understand that today I do not know what your sentence will be?

The Defendant:  I'm sorry.  I did not understand.

The Court:  Do you understand that today I don't know what your sentence will be?

The Defendant:  Yes, ma'am.

The Court:   And I won't know until after the probation officer has done an investigation of your case and has written a presentence report that will assist me in sentencing.

The Defendant:  Yes, ma'am.

5

The Court:  You and Mr. Rodriguez will be given a copy of that report, Mr. Davis will also get a copy of that report, and each of you will have an opportunity to make any objections you may have to the report.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  We will then have a sentencing hearing.  At that sentencing hearing, I will rule on any objections that have been made to the presentence report.  I will also rule on any motions that may be made, any recommendations that may be made, or any other matters that might come to my attention that would have something to do with the sentence that you will be given.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  And it may be that at the time I pronounce sentence, the sentence I give you is more severe than the one that you and Mr. Rodriguez may have estimated that you might get when you all were talking about how the guidelines may apply in your case.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  And if the sentence is more severe than the one you're expecting to get, do you understand that you will not be given an opportunity to withdraw your plea of guilty at that time?

The Defendant:  Yes, ma'am.

                   *                        *

The Court:  But by entering into this written plea agreement, if you do, do you understand that you will be waiving most, if not all, of your right to appeal, and specifically I believe that your plea agreement provides that you're waiving your right to appeal any sentence I impose except for an upward departure not requested by the Government or a sentence imposed above the statutory maximum.

Do you understand that that's what you will be waiving if you sign a written plea agreement?

The Defendant:  Yes, ma'am.  Yes, I understand.

                   *                        *

The Court:  Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea, and you would then have a right to a trial by jury or by judge; at that trial, you would have the right to the assistance of counsel in your defense; you would have the right to see and hear all the witnesses and have them cross-examined in your defense; you would have the right on your own part to decline to testify, unless you voluntarily elected to do so in your own defense; and you would have the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your defense. Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  Do you also understand that at the trial, the jury would be told that they must presume you were innocent until such time, if ever, the Government brought them evidence to convince them beyond a reasonable doubt that you were guilty of the crimes you've been accused of?

The Defendant:  Yes, I understand, ma'am.

The Court:  Do you also understand that at the trial, if we had a trial, the jury would be told that you had a right not to testify or put on any evidence and they would be told if you decided not to testify or put on any evidence, they could not use that against you as some indication or evidence that you were guilty.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  Do you also understand that at trial the jury would be told that they could not expect you to testify or put on any evidence and they could not expect you to explain yourself or prove your innocence?

The Defendant:  Yes, ma'am.

The Court:  Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as all the other rights associated with a trial that I've just outlined for you?

The Defendant:  Yes, ma'am.

*          *

7

The Court:  All right.  Mr. Davis, tell me what it is the Government is prepared to prove if we went to trial in this case.

Mr. Davis:  Yes, your Honor.  If the case would go to trial, the United States would show that on or about November 16th of 2001, Ezequiel, E-Z-E-Q-U-I-E-L, Perez-Monter and Angel Bailon-Enriquez arrived in Reynosa, Mexico, and met a smuggler they knew as "Arturo" who smuggled them across the border by crossing the Rio Grande River near Hidalgo, Texas.  Once across the border, they were turned over to Heriberto Escobar who drove them just south of a Border Patrol checkpoint. Perez and Bailon then walked around that checkpoint and were picked up on the other side by Candido Escobar who drove the pair to Houston, Texas.

After arriving in Houston, Candido Escobar turned the two aliens over to Arturo Apaez-Mendez, who brought them to meet Jesus Flores-Guerrero, the foreman of Aztec Manufacturing in Houston, Texas.  The aliens were to work there until their smuggling fees were paid.  While working at Aztec Manufacturing, Bailon and Perez were housed at the home of Calixto Escobar at 9355 Galaxy, Houston, Texas. Payment for room and board at the residence was $130 per month each.  In addition, Bailon and Perez paid $20 each to Flores-Guerrero to drive them to work and back; lastly, they owed $1,300 each in smuggling fees to Arturo Apaez-Mendez.  All of these fees were taken out of their earnings at Aztec Manufacturing where the aliens worked six days a week from approximately 9:00 a.m. to midnight.

On or about December 28 of 2001, Ezequiel Perez-Monter and Angel Bailon-Enriquez fled from Aztec Manufacturing.  On January 15, 2002, Perez-Monter contacted Jose Lopez at Aztec Manufacturing to inquire about back pay he felt was owed to him and Bailon-Enriquez and was told to come there and pick up the money.

Perez-Monter and an acquaintance, Victor Nunez, went to Aztec Manufacturing and were met by Candido Escobar, Jose Flores-Guerrero, and Santos Miguel Celis-Chavez, also known as "Chirris."  Flores-Guerrero said Perez and Bailon still owed him $900 and demanded payment.  Celis-Chavez then grabbed Perez by the hair and forced him into Flores-Guerrero's car.  Flores gave Victor Nunez the phone number of Apaez and told him to give that to Bailon.  Upon learning what had happened, Bailon contacted the Houston Police Department.

INS agents were contacted and an INS undercover agent, posing as a relative of Perez, contacted Apaez.  Apaez told the agent that the smuggling fees were to be raised from [$]1600 to $2600 and stated he was going to beat Perez, whom Apaez had put in the trunk of a car, and when he was through with him, he would beat Bailon.  The agent attempted to negotiate the release of Perez with Apaez but was unsuccessful.  At that point, a decision was made to contact Jose Flores-Guerrero at this residence at 8334 Caddu, C-a-d-d-u, Houston, Texas.  Flores agreed to cooperate

and called Apaez and told him to come to the residence.  Apaez-Mendez arrived there with Perez-Monter and Miguel Velez-Cortez and were arrested.

Perez-Monter was interviewed and said after he was kidnaped, Candido Escobar and Celis-Chavez had released him to Apeaz-Mendez and Velez-Cortez.  Perez was forced into Apaez's car and was beaten by Apaez-Mendez while Velez-Cortez drove away.  Apaez told Perez that if the smuggling fees were not paid, Apaez was going to take him back to the border, break his legs and leave him in the desert.  Perez complained that he was spitting up blood and abdominal pain from the beating he sustained.

Ezequiel Perez-Monter and Angel Bailon-Enriquez are not citizens of the United States.

The Court:  All right.  Mr. Apaez-Mendez, tell me in your own words what it is you did to commit the crimes that you're pleading guilty to this morning.

The Defendant:  She wants me to tell her about what?  Exactly about my life or?

The Court:  No, no.  You're pleading guilty to committing–aiding and abetting the harboring of illegal aliens and hostage taking.  What I want to know is, what did you do to commit those crimes?

The Defendant:  Unfortunately, I committed a grave mistake of getting together with those types of people.  I worked with them.  We got work for those boys.  They lived at Calixto Flores, in Calixto Flores'house.  I did not know about them.  Afterwards, they were brought over to me because they were going to work and I was going to work because I was setting up a business.  And then I was around in the street and they ran around with me.

The Court:  Okay.  Let me just interrupt you for a second.  Mr. Davis has told us what he thinks the Government can prove if he went to trial in the case, and I believe that that is the factual basis of what's contained in the written plea agreement that you propose to enter into.  Is there anything is that factual summary of what happened that you think is incorrect?

The Defendant:  There's a part where they say they got in contact with me in Reynosa.  It wasn't me—it wasn't I.

The Court:  Are you talking about "Arturo"?  Is that another Arturo?

Mr. Davis:  That was another Arturo, your Honor.  We're not sure.

The Court:  Okay.  So that's not you.  They're not saying that's you.

Mr. Davis:  We have that person charged in the Indictment as "Arturo Last Name Unknown."

The Court:  So anything else about the statement that's written down in your plea agreement that Dr. Davis told us about just a few minutes ago, anything about that's incorrect?

The Defendant: No, Everything is all right.  (Document No. 159, pp. 4-12, 14-18).

Thereafter, Apaez-Mendez filed a Motion to Withdraw his Guilty Plea (Document No. 106), in which Apaez-Mendez argued that he pleaded guilty due to ineffective assistance of counsel. According to Apaez-Mendez, his attorney misled him about the length of his sentence. The Government responded (Document No. 121) and argued that Apaez-Mendez should not be allowed to withdraw his guilty plea because his plea was knowing and voluntary.  In response to Apaez-Mendez's allegations of ineffective assistance of counsel, the Government attached an affidavit of his attorney, at the time of the plea, Mr. Rigoberto Rodriguez, in which counsel responded to Apaez-Mendez's allegations of ineffective assistance of counsel as follows:

I respectfully deny any and allegations made regarding the voluntariness of the plea by Mr. Arturo Apaez-Mendez in case no. H-02-79-S as presented in (Exhibit A) hereby attached.  I further assert that Mr. Artuor Apaez-Mendez['s] guilty plea was made knowingly, intelligently and voluntary.

Furthermore, that Mr. Arturo Apaez Mendez knowingly intelligently and voluntary waived his right to a Jury Trial.  (Document No. 121, Exhibit 1).

A motion hearing was held December 6, 2002, and Judge Harmon denied Apaez-Mendez's request to withdraw his guilty plea.  (Document No. 178).

Prior to sentencing, a pre-sentence investigation report ("PSR")  was prepared to which Apaez-Mendez filed written objections.  (Document Nos. 207, 225, 235). Pursuant to the PSR,

Apaez-Mendez's guideline sentencing range was calculated as follows: (1) Apaez-Mendez had a base offense level of 24. (2) Because ransom was demanded from aliens being held hostage, pursuant to U.S.S.G. § 2A4.1(b)(1), six levels were added to his base offense level. (3) Because Apaez-Mendez's role in the offense was that of an organizer/leader, pursuant to U.S.S.G. § 3B1.1(a), 4 levels were added to his base offense level. (4) Because Apaez-Mendez threatened and intimidated witnesses to lie to law enforcement, pursuant to U.S.S.G. § 3C1.1, 2 levels were added to his base offense level. (5) With an adjusted base offense level of 36, and with a criminal history of category 1, Apaez-Mendez had a guideline sentence range of 188 to 235 months. On March 7, 2003, Apaez-Mendez was sentenced at the lower end of the guidelines range to concurrent terms of 200 months imprisonment on Counts 1 and 3, to be followed by concurrent 3 year terms of supervised release, and a $200 special assessment. The Government's Motion to dismiss Count 2 was granted. (Document No. 239, 240, 241, 242, 243). Judgment was entered on March 18, 2003. (Document No. 246).

Apaez-Mendez appealed his conviction to the Fifth Circuit Court of Appeals. (Document No. 247). The Fifth Circuit, on May 2, 2003, granted Apaez-Mendez's unopposed motion to dismiss the appeal. (Document No. 262). Apaez-Mendez did not file a petition for writ of certiorari with the United States Supreme Court. The 90 day period for filing a petition for writ of certiorari with the Supreme Court expired on or about July 31, 2003. SUP. CT. R. 13.1 ("A petition for certiorari ... is timely when it is filed ...within 90 days after entry of the judgment."); *Clay v. United States*, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one year limitations period starts to run when the time for seeking such review expires"); *United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000) (§

2255's statute of limitations begins to run when the time for filing a petition for certiorari expires).

As such, Apaez-Mendez's judgment and conviction became final on  or about July 31, 2003.

The docket sheet reveals that Apaez-Mendez filed a Motion *Sub Judice* (Document No. 320) on May 7, 2007.  On June 6, 2007, Judge Harmon issued an Order that advised Apaez-Mendez that, based on the type of relief being sought,  his motion had been construed as a § 2255 motion, and not a § 2241 motion, and he was given the option to supplement his motion or voluntarily withdraw it. (Document No. 318).  Apaez-Mendez failed to respond to the June 6, 2007, Order and thereafter, it was filed as a § 2255 motion on August 7, 2007.  (Document No. 321).

In his § 2255 motion, Apaez-Mendez argues that his criminal judgment is void because the Court did not have jurisdiction to impose a judgment of conviction because Title 18 of the United States Code was not properly enacted and is therefore unconstitutional.  The Government has answered and has moved to dismiss the instant action as time-barred.  (Document No. 324).  The Government further argues that even assuming that Apaez-Mendez had timely filed his § 2255 motion, he nevertheless is not entitled to relief, because he waived his right to appeal his sentence or to challenge it in a § 2255 proceeding.  Finally, the Government argues that even assuming that instant motion was not time-barred, and that Apaez-Mendez had not waived his right to bring a § 2255 motion, he is not entitled to relief on his claim that the Court did not have jurisdiction to impose a criminal judgment.  According to the Government, arguments similar to those advanced by Apaez-Mendez concerning the enactment of the legislation in question have been routinely rejected as meritless by Courts in the Southern District of Texas and elsewhere.  *See United States v. Martinez*, 2006 WL 1293261 (S.D. Texas May 6, 2006) (Chief Judge Head) (Title 18, United States Code, § 3231 and Title 28, United States Code§ 2255 were properly enacted and are not rendered

12

null by an "adjournment *sine die*"); *Delreth v. United* States, 2006 WL 1804618 (S.D.Tex. June 25, 2006)("Petitioner has not pointed to any constitutional requirement that bills passed by only one house of Congress before an inter-session adjournment of the same Congress be voided."); United *States v. Harbin*, 2007 WL 1849004 (S.D.Tex. June 25, 2007)(District Judge Jack) ("In short, the law challenged by Harbin was properly enacted into law ... Moreover, ... even if the 1948 amendment to § 3231 were defective, the Court would nonetheless retain jurisdiction over Harbin's case because the predecessor statute to § 3231 also provides for such jurisdiction."); *United States v. McCuiston*, 2007 WL 2688502 (S.D.Tex. Sept. 12, 2007); *Mayfield v. United States*, 2007 WL 1875867 (E.D. Tex. June 27, 2007) (same); *United States v. Risquet*, 426 F.Supp. 2d 310, 311 (E.D. Pa. 2006)(same); *United States v. Felipe*, 2007 WL 1740263 (E.D. Pa. June 14, 2007).  This § 2255 proceeding is ripe for ruling.

## II. Discussion

### A. Apaez-Mendez's  § 2255 motion is time-barred

The United States argues that Apaez-Mendez's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because it is time-barred.  On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted.  With the enactment of AEDPA, 28 U.S.C. § 2255 now specifically provides for a one-year statute of limitations:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of–
>
> (1)     the date on which the judgment of conviction becomes final;
>
> (2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the

United States is removed, if the movant was prevented from filing by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Here, because Apaez-Mendez's conviction became final on or about July 31, 2003, he had until July 31, 2004, to file a § 2255 motion. The docket sheet shows that Apaez-Mendez filed his § 2255 motion on August 7, 2007, more than three years after the expiration of the limitations deadline. Under these circumstances, Apaez-Mendez's motion is untimely under § 2255(1), and is subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(2)-(4), or that the limitations period should be equitably tolled.

None of the alternate provisions for the commencement of the limitations period applies. Apaez-Mendez's § 2255 motion cannot be considered timely under 2255(4) because Apaez-Mendez has not, and cannot, allege that the facts underlying his claims could not have been discovered through the exercise of due diligence by the time his conviction became final. Further, Apaez-Mendez's motion cannot be considered timely under § 2255(2) because Apaez-Mendez has not alleged that he was in any way impeded from filing a timely § 2255 motion. Finally, Apaez-Mendez's § 2255 motion cannot be considered timely under § 2255(3) because Apaez-Mendez's claims are not based on a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

14

Further, upon this record, equitable tolling is not available.  Rare and exceptional circumstances may warrant the application of equitable tolling principles to a late filed § 2255 motion to vacate, set aside or correct sentence.  *United States v. Patterson,* 211 F.3d 927 (5th Cir. 2000). Equitable tolling, however, is not available if the petitioner does not act diligently in attempting to meet the one year limitations deadline.  *Coleman v. Johnson,* 184 F.3d 398, 403 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057 (2000).  In addition, the Fifth Circuit has approved of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'"  *Fierro v. Cockrell,* 294 F.3d 674, 682 (5th Cir. 2002) (quoting *Coleman,* 184 F.3d at 402); *See also  Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1999), *cert. denied*, 526 U.S. 1074 (1999) (Inconsistent ruling by the district court constituted exceptional circumstances which warranted the application of equitable tolling principles); *United States v. Patterson,* 211 F.3d 927 (5th Cir. 2000) (Rare and exceptional circumstances existed to warrant equitable tolling where the Movant was under mistaken impression as to filing deadline, where that mistaken impression was furthered by the District Court); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (remanding case for rehearing on equitable tolling where the petitioner alleged "he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf").  In contrast, the Fifth Circuit has disapproved of the application of equitable tolling for ignorance of the law or for circumstances which are "garden variety claims of excusable neglect." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999); *Felder v. Johnson*, 204 F.3d 168, 171-73 (5th Cir.), *cert denied*, 531 U.S. 1035 (2000); *Lockingbill v. Cockrell,* 293 F.3d 256, 265 (5th Cir.  2002).

15

Here, Apaez-Mendez has provided no basis for equitable tolling of the statutory period of limitations. Given the absence of any facts in the record that would constitute a rare or exceptional circumstance, equitable tolling of the limitations period is not available.   Accordingly, Apaez-Mendez's § 2255 is time-barred.

## B.  Wavier

A defendant's waiver of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary.  *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (Enforcing defendant's voluntary and knowing waiver of § 2255); *United States v. McKinney,* 406 F.3d 744, 746-47 & n.5 (5th Cir. 2005) (Enforcing, post-*Booker*, a waiver of appeal right that was signed prior to the issuance of *Booker).* Such waivers, however, do not "preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004).  In the context of a plea agreement waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute.  *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir.), *cert. denied*, 126 S.Ct. 502 (2005). In addition, when a defendant alleges that his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims are not barred by the waiver.  *See United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002) ("[i]neffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); *United States v. Cockerham,* 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging

16

the validity of the plea or the waiver.  Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."), *cert. denied*, 534 U.S. 1085 (2002); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (where the ineffectiveness claims raised in a § 2255 motion relate to counsel's performance at sentencing, the defendant's plea agreement waiver of this right to challenge his conviction in a § 2255 proceeding is enforceable), *cert. denied*, 531 U.S. 1175 (2001).[2] Ineffective assistance of counsel claims, including challenges to counsel's performance at sentencing, which do not relate to the validity of the Plea Agreement and waiver, can be waived.  *White,* 307 F.3d at 343.  Otherwise, "[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result.  A knowing and intelligent waiver should not be so easily evaded."  *White,* 307 F.3d at 344.

_____

[2] There are some other limited situations in which a plea agreement waiver of the right to seek collateral review under § 2255 is not enforceable, such as where the sentence imposed violates the terms of the plea agreement, the sentence is illegal, or the Government has suppressed exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).  *See DeRoo*, 223 F.3d at 923 ("defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement"); *United States v. Baramdyka,* 95 F.3d 840, 843 (9th Cir. 1996) ("the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty"), *cert. denied,* 520 U.S. 1132 (1997); *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004) (Waiver does not preclude review of a sentence that exceeds the statutory maximum).  None of those circumstances is at issue in this proceeding.

17

Here, pursuant to a written Plea Agreement, Apaez-Mendez waived his right to appeal and waived his right to collaterally attack his plea, conviction and sentence.  As discussed above, the Plea Agreement was explicit with respect to the waiver of the right to appeal and to pursue collateral relief. (Document No. 91, ¶ 9).

In addition, at his Rearraignment on June 21, 2002, the Court engaged in an extended colloquy to ensure that Apaez-Mendez was competent to participate in the Rearraignment proceedings, had read the written Plea Agreement, discussed the contents of the written Plea Agreement with counsel and understood the agreement, that no promises had been made to induce his plea, that he understood the offense to which he was pleading guilty, the maximum sentence he faced, the rights he was giving up by virtue of his guilty plea, and the factual basis of the charges and his guilty plea. The Court also advised Apaez-Mendez about the waiver provisions.   Based on Apaez-Mendez's responses during the lengthy colloquy, Judge Harmon concluded that Apaez-Mendez's guilty plea and waiver of his right to appeal and collaterally attack his conviction and/or sentence was knowing and voluntary.

Given Apaez-Mendez's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison,* 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights which he was waiving, that he understood his possible range of punishment and how his sentence would be computed, and that he understood that he had waived his right to appeal and to file a post conviction proceeding, Apaez-Mendez has not shown that his plea was not counseled, knowing and voluntary, and upon this record, Apaez-Mendez's plea agreement waiver of his right to collaterally attack his conviction with a      § 2255 motion is enforceable. Apaez-Mendez's sentence does not exceed the

18

statutory maximum – that is, the maximum sentence allowed by statute, *see* 18 U.S.C.§ 2252A(a)(5)(B) (maximum term of 20 years for Count one and up to life for Count three), and does not constitute an upward departure from the Sentencing Guidelines. *See United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005). Because Apaez-Mendez's plea agreement, and waiver of appeal and collateral rights contained therein, were knowingly, voluntarily, and intelligently entered, because Apaez-Mendez has waived his right to bring a § 2255 motion, and because that waiver is valid and should be enforced, it serves as a bar to the instant § 2255 motion, *e.g.*, *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000); *Davila*, 258 F.3d at 451-52; *United States v. Nguyen*, 2005 WL 14090 (E.D. La. 2005); *Morua v. United States*, 2005 WL 1745474 (S.D.Tex. 2005) (Hittner, J.); *United States v. Rohmfeld*, 2006 WL 126636 (S.D.Tex. 2006) (Jack, J.), and this § 2255 is subject to dismissal.

   **C.  Merits**

   Apaez-Mendez argues that his conviction is null and void and that the Court lacked jurisdiction to impose criminal judgments because 18 U.S.C. § 3231 and 28 U.S.C. § 2255 were improperly enacted, and as such, his conviction is constitutionally infirm and he must be released. He further alleges that his counsel was ineffective for failing to argue this point. The case law shows that Apaez-Mendez is not entitled to relief on this claim. *See United States v. Martinez*, 2006 WL 1293261 (S.D. Texas May 6, 2006) (Chief Judge Head) (Title 18, United States Code, § 3231 and Title 28, United States Code§ 2255 were properly enacted and are not rendered null by an "adjournment *sine die*"); *Delreth v. United* States, 2006 WL 1804618 (S.D.Tex. June 25, 2006)("Petitioner has not pointed to any constitutional requirement that bills passed by only one house of Congress before an inter-session adjournment of the same Congress be voided."); United

*States v. Harbin*, 2007 WL 1849004 (S.D.Tex. June 25, 2007)(District Judge Jack) ("In short, the law challenged by Harbin was properly enacted into law ... Moreover, ... even if the 1948 amendment to § 3231 were defective, the Court would nonetheless retain jurisdiction over Harbin's case because the predecessor statute to § 3231 also provides for such jurisdiction."); *United States v. McCuiston*, 2007 WL 2688502 (S.D.Tex. Sept. 12, 2007); *Mayfield v. United States*, 2007 WL 1875867 (E.D. Tex. June 27, 2007) (same); *United States v. Risquet*, 426 F.Supp. 2d 310, 311 (E.D. Pa. 2006)(same); *United States v. Felipe*, 2007 WL 1740263 (E.D. Pa. June 14, 2007).

**V.  Conclusion and Recommendation**

Based on the foregoing, and the conclusion that Apaez-Mendez's § 2255 motion was not timely filed, that equitable tolling is not available, that Apaez-Mendez waived his right to pursue relief under § 2255, and that no relief is available to Apaez-Mendez in any event, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 324) be GRANTED, that Movant Apaez-Mendez's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 321) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved

party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 21st day of May, 2008.


Frances H. Stacy
United States Magistrate Judge